The next case we'll hear is Hernandez-Avalos v. Holder. Ms. Jezik? Did I say that right? Okay, thank you. I had to hear it from you. Good morning. May it please the Court, my name is Tamara Jezik and I represent Maidai Hernandez in her petition for review of an order of the Board of Immigration Appeals denying Ms. Hernandez's application for asylum and ordering her removed to El Salvador. Now, there are three issues before the Court. The first is, did the harm that Ms. Hernandez experienced rise to the level of past persecution? The second issue is, was the harm inflicted upon Ms. Hernandez on account of her membership in the particular social group of her family? And the third issue is, did Ms. Hernandez establish that the government of El Salvador is unwilling or unable to protect her from the perpetrators of her persecution? On the first issue, did the level of harm that she experienced rise to the level of past persecution? The BIA did not decide this issue. We know from Crespin Valladares v. Holder and from Lee v. Gonzalez that the threat of death qualifies as persecution. The IJ erred in holding that the death threats Ms. Hernandez received did not rise to the level of past persecution because no action was taken on the threats and Ms. Hernandez was never physically harmed. So with regard to the level of harm issue, we're asking that the Court hold as a matter of law that the threat of death qualifies as persecution and remand to the Board for the Board to decide the issue. Isn't that the law in this circuit that a death threat amounts to persecution? That's correct, Your Honor. The Board did not decide the issue. Rather, it affirmed the IJ on the two other issues. Now on the nexus issue, was the harm inflicted upon Ms. Hernandez on account of her membership in the particular social group of her family? Now Ms. Hernandez does not contend that the first death threat she received was on account of a protected ground. The first death she received shortly after gang members from the gang group Mata 18 murdered her husband's cousin named Agustin Rojas and Ms. Hernandez identified the body. The gang members who murdered Agustin Rojas threatened Ms. Hernandez with death if she reported them to the authorities as Mr. Rojas' killers. However, neither the BIA nor the IJ, the immigration judge, addressed the reason for the second and third death threats when on two separate occasions Mata 18 members came into Ms. Hernandez's home, held a gun to her head, and threatened to kill her if her son did not join the gang. Well, they did address that. They said that that threat wasn't because of her son, but it was because she did more criminal activity involving her son. I thought they did address it. Actually, what the board said was, yes, the board says on the administrative record on page four, she was not threatened because of her relationship with her son, i.e. family, but rather because she would not consent to her son engaging in a criminal activity. Now, there's no other criminal activity at issue in the case except for joining a gang. So essentially, the board is saying she was not threatened because of her relationship to her son. And the IJ found her credible. The IJ did find her credible. And so this record then has established that at some point, and it does appear to me you're right, either the BIA or the IJ, they conflate the two threats. That's correct, the three threats. Well, just let me finish, though. And then it strikes me that they say that the second threat wasn't against her because of that familial bond, but they didn't ask her to produce any 14-year-old to join the gang, did they? They didn't say to her, we're going to kill you unless you find us two boys from your neighborhood, right? That's correct. It was all focused on her son. That's correct. And her role over and influence over her son. Isn't that right? Is that your argument? Yes, precisely because she is her son's mother. That is why she was threatened with death. Now, there are three separate grounds for the court to vacate the board's decision on the nexus issue. One is that the immigration judge actually stated in his opinion that there was, quote, unquote, no evidence that the threats were made to Ms. Hernandez or her son because of family ties or status or membership. And this, of course, was clear error because of Ms. Hernandez's testimony, both in court and in her affidavit. And the BIA is charged with reviewing factual determinations for clear error, but the BIA found that there was no error. So that is one reason for the court to vacate the BIA's decision. The second reason is because both the IJ and the BIA abused their discretion by providing no reasoning for determining that the second and third death threats were not on account of Ms. Hernandez's relationship to her son. Indeed, in their opinion itself, they seem to acknowledge that her relationship with her son was one central reason for the death threats. Isn't it a central reason? It doesn't have to be the only reason. That's right. The law says it does not have to be the only reason, just a central reason. So we contend that the board and the IJ abused their discretion by failing to provide a reason for its decision on the nexus analysis. And Aquino Cordova v. Holder, quoting Tassie v. Holder, has told us that the BIA abuses its discretion if it fails to offer a reasoned explanation for its decision. What would you have us do on that? Just say they were wrong and say that it was a central reason? Or would you want us to remand because you pointed to some error they made for them to have the opportunity to correct on that prong, on account of a protected ground? Well, Your Honor, I also do believe that the agency's decision was not supported by substantial, reasonable, and probative evidence on the record as a whole. So I do believe that the court could hold that the record compels the court to conclude that the death threats were precisely on account of the mother's relationship with her son. Let's talk about the first two issues. You think that, although there's a very high standard, we'd be compelled to find otherwise. You think that is the case on the death threat existing and that death threat, issue number two, being at least in part because of her connection to her son? I do. I believe that the evidence is so strong that it compels the court to conclude that the death threat was because of a protected ground. What about the third factor? The third factor is whether Ms. Hernandez has established the government is unwilling or unable to protect her against the perpetrators of her persecution. Now, there are three reasons that the BIA erred in affirming the IJ's conclusion that the petitioner failed to establish that the government was unwilling or unable to control. The first is that one of the three reasons that the IJ gave for determining that Ms. Hernandez had not met her burden was, and I quote from administrative record on page 50, despite the gang problem in El Salvador, which is quite serious, law enforcement in that country with significant support for the United States government has taken a variety of law enforcement and social measures to address gang criminality. Now, in this case, the immigration judge committed error in relying on country condition evidence outside the record without citing to it. And Ms. Hernandez, in her brief before the BIA, challenged this finding. She stated, and it's on page 18 of the record, that there is no evidence in the record that stands for the proposition that El Salvador's government is able to curtail gang violence. And the board's decision from 1997, a matter of SMJ, tells us... But is it your position that what the IJ said, the IJ just said that? Yes. Just said it. Well, the IJ was relying on knowledge that the IJ had accumulated. That's what I mean, but just said that based on his or her, I'm not sure, was it his? His. His knowledge. That's correct. There was no evidence in the record about the law enforcement taking significant steps to address the gang problem. Was the State Department report on El Salvador entered in the record? It was not entered in the record in the IJ level. When Ms. Hernandez appealed to the BIA, she included a cite and a quote from the 2011 State Department report. What did the BIA say about that point, about what he did on that score? The BIA said nothing. The BIA said that there was no clear error in the immigration's decision on the unable and unwilling to protect element. So it was your argument that the IJ just stated what he said he knew. He didn't say it, but it's implicit. I know this about the country. They're trying pretty hard. And then the BIA said nothing about his saying that. That's correct. The BIA said there's no clear error in the immigration's decision on the unable or What are any other weaknesses on the third decision? Yes. The agency distorted the record and disregarded important aspects of the petitioner's claim. And Aquino has told us, citing Tassi, that the BIA abuses its discretion if it distorts or disregards important aspects of the applicant's claim. Now, both the IJ and the BIA distorted the significance of the fact that one of the five gang members who murdered Agustin Rojas and who threatened Ms. Gonzalez was imprisoned for an unrelated crime. While it disregarded a number of important elements in the record, it disregarded By the way, I hear what you're saying. You say the BIA was just factually wrong on that point? No. Okay. The IJ, Ms. Hernandez did testify that one of the gang members responsible for Agustin's murder was imprisoned for 25 years for unrelated crimes. And one reason that it's not significant is we don't know anything about those crimes. We don't know who the victim is. We don't know where the action took place. So you say it was one of the gang members involved in the murder. It's just that the sentence was not because of the murder. He was convicted for other crimes. No one was convicted for the murder of Agustin Rojas. So the answer to my question would be yes? I said a person involved in the murder was put in jail, but there's not any evidence that he was put in jail for the murder. The evidence is that he was put in jail for other crimes. That's what Ms. Hernandez testified to. So is there any evidence that he was put in jail for the murder? No. Okay. Aspects of the testimony of Ms. Hernandez, and again, she was ruled credible. She testified in her affidavit that she lived in a neighborhood that was controlled by the 18th Street Gang. On page 146 of the record that's in her affidavit, she testified in court that she knew gang members were from the 18th Street Gang because they lived in the same neighborhood. And we know from her asylum application on page 70 of the record that she lived in the neighborhood from 1994 to 2008. And she knew that MS-13 gangs made incursions into her neighborhood. And she states in her affidavit, Also in her affidavit, she stated, Let me ask you, what would you propose our remedy be on the third issue? You said the first two we could decide. Can we decide the third issue based on this record? Or do you say, do we have to remand that or can we decide it? Can we decide it as this court? Certainly, at the least, I believe that the court has to remand. I didn't ask you that. I said, not that we're authorized to remand it. I asked, do we have to remand it if we agree with your argument? I do believe that you have to remand because the BIA failed to recognize the error of the IJ. Why wouldn't we just say they were in error? And just say that she has established that third crime. I believe that the court could do that. And I do believe that the testimony, because the court found her credible, That's my question. Maybe I'm confusing you. You said on the first two, it clearly was an error of law or enough basis that we could reach an opposite conclusion. And the third issue on the condition of the country, Could we just decide that ourselves compelled on the record? Or do we have to remand for them to make some determination? That's my question. I do not think that the court has to remand because the BIA has already had the opportunity to address the issue. And they decided it wrongly. In other words, you would see it as, while they didn't make a decision, It was in front of them. They could have. In fact, as you say, they should have. And failing that, we could just go ahead and decide the issue based on this record. Because you think it's so clear. Yes. Yes, Your Honor. But if the court disagrees with me and doesn't believe that the evidence compels the opposite conclusion, Then the court must remand because of the error of law. And because the BIA disregarded important aspects of Ms. Hernandez's testimony. What in the country report do you think might compel us to make the decision you would want? Just something in that report you think compels us to think that El Salvador either can or won't control gang violence? I think the country report bolsters Ms. Hernandez's testimony. Do you think it's the country report and specific evidence in this case? I think that the evidence in the case was enough. Particularly because of Ms. Hernandez's experience in her own community that is controlled by the 18th Street Gang And MS-13 members made incursions into her neighborhood. And she knows the authorities, what the authorities do when people report the gang activities to the authorities. They either detain the individuals for a couple of days or the people who report the gang activity, The gang members find out and then they're in greater danger. So I think that evidence is enough on her testimony alone. The human rights report certainly bolsters her testimony. One is that gang activities in prison remained a serious problem. And gangs continue to exercise influence within the prisons. So even though there is evidence that It's more than prison, isn't it judicial system as well? Yes, the principal human rights abuses included widespread corruption, particularly in the judicial system. See, her claim isn't so much what goes on in the prison. She's not worried about herself being put in prison. She's worried about corruption in the judicial system. That's correct, Your Honor. But it does go to the issue of one of the gang members was imprisoned for an unrelated crime. Even if gang members are occasionally put in prison, They still continue to influence criminal activities from within the prison. Also, the State Department report tells us that intimidation and killing of police officers, Crime victims and witnesses created a climate of fear. Gang intimidation and violence against women. Isn't that exactly what she testified to? Yes, Your Honor. Of her own experience in her neighborhood. And gang intimidation Do you do a lot of this type of work? I do, Your Honor. Do you see it very often where the testimony from the personal experience that is credible Matches up so well with the country report? This is a pretty strong match in this case. Yes, Your Honor. Particularly when gangs in Central America are involved. Thank you, Your Honor. Thank you. You reserved some time. Ms. Phillips. May it please the Court, Rebecca Hoffberg Phillips on behalf of the United States Attorney General. I want to start off by saying that this case reminds me much of a case this Court recently decided. Judge Wynn was actually one of the people to decide that case. Because of the way that the decision starts off by saying just how sympathetic the conditions are in El Salvador. And the government fully recognizes and empathizes with the conditions there. It is truly horrendous. And it is certainly very sad and unfortunate. The problem here is that we need a legal basis for asylum. And you have to have several criteria to satisfy that legal basis. This isn't a court of equity. It's a court of law. And as sad as it is, the factual circumstances, as the Court has recognized, they're absolutely true. Well, maybe we'll just walk through the law and you can argue against the legal basis she gave us. Well, yes. So the legal, so a few things that I want to start off with. The Board did not have to determine whether the harm rose to the level of persecution. The government agrees that this Court has recognized that death threats would rise to the level and to the extent that the IJ found otherwise. Is the IJ wrong? According to this, yes. According to this Court. So the government says the IJ was wrong on the fear of persecution. As to whether death threats rise to the level of persecution. That's something. Well, let's see what that means. It was he found her credible. She testified to a death threat. So we have the fact of a death threat in this case, correct? We do. And in this circuit, that amounts to the fear of persecution. This Court found in Crespen, I believe, that that would be, yes. Is that correct, yes or no? That that would amount to. So for our analysis, the government would say that that finding by the IJ would be incorrect. I believe so. Okay. Based on what, I do believe so. However, however, the Board did not adopt that finding. Specifically, the Board didn't have to reach the question of whether it rose. And the Board actually then moved on and said, even assuming that it did. So in fact, the Board basically sort of didn't agree with the IJ to the extent that. In other words, the bottom line is there is a death threat in this case. There is a death threat. That's an operative fact in this case. Yes. I mean, yes, that happened. But it's harmless error is what I want to get at in terms of to the extent that the IJ said anything about it or indicated. He didn't actually use those words. There is. Contrary to what he said, but what you say doesn't matter. But there is factually, as an operative fact, a death threat in this case. Yes. That we see this court has said amounts to fear of persecution. But persecution also requires more. So that's what I want to get to. That's not the end all. And that's why the Board didn't have to reach it. What else is there then? It has to be on account of a protected ground. And you have to show an able and willing. And I want to get to both of those. No, no, no. No, you don't have to show that to show death threat, though. There's a death threat. The first step, as Ms. Jessica outlined, the government doesn't argue against. Right. So the second step is on account of why was the death threat made, you argue on that basis. Right. And that's – and persecution is defined by being on account. And your argument on that basis is? Our argument is that under the REAL ID standard, you need at least, as this court recognized, there can be more than one. But you need at least one central reason to be a protected ground. Now, here, the protected ground alleged is family as a particular social group, which the government also does not dispute. You know, that family can constitute a particular social group. And this court has recognized as such. That's not in dispute. What we're disputing is whether family is at least one central reason for the persecution. What does the government say when somebody puts a gun to the mother's head and said, we're going to kill you if you won't let your son join? What the heck is that? Your Honor, family certainly – What is that? Is that not indication that they're talking to her because of the familial connection? They are talking to her because of the familial connection. The test is whether that is – I'm sorry. The government's position is that that is subordinate or incidental to the main central reason and the only central reason that the board recognized, which is the recruitment. By the way, then, why didn't they put a gun to her head and say, we're going to shoot you unless you bring us a 14-year-old boy from the neighborhood? The government sees no distinction then, I take it, between a mother or a woman. Let's take a woman with a gun to her head saying, you will be killed if you don't deliver us some random 14-year-old boy. You see no distinction between that and a gun put to the head of a woman and they say, mother, if you don't give us your son, we're going to kill you. The government thinks those as being exactly the same statements. Well, Your Honor, if she was the one – When I first say the government sees those, maybe you can say that's not the statements, but my question is, does the government see those as I've outlined them as the same statement? The relationship matters. The government agrees that her relationship to her son – it mattered to the extent that she was in the position to sort of give the authority or the consent for her son to participate. And that's why they approached her, because she was his mother. Yes. For no other – well – The test is not but for, and that's where – But a central reason is easier than but for. It's incidental. Let me put it to you this way. Isn't that true? The judge didn't suggest it was a but for, but it certainly makes one heck of a case that's a central reason. It's incidental and subordinate to the reason. She thought at that moment when they're saying, we're going to kill you unless you deliver your son, how incidental is the son in all that? How incidental is that connection? They went to her not because they wanted to get another gang member. They wanted that one, her son. She had authority over her son or they wouldn't have gone to him. They just didn't pick her at random and say, deliver Eduardo. They said, deliver your son. I know the government makes this argument, but I've heard it made a bunch of times. I still don't understand it. Well, if the son were claiming recruitment, the court would agree that recruitment is not on account of a protected ground. There's something a little bit odd about saying that a claim that her son could not bring for himself as being targeted – What if they went to the son and said, if your mother doesn't do something right, we're going to kill you. That would be because of family, wouldn't it? If he was being targeted on account of a family membership. That's what I said. That's what I said. They go to him. You said, if recruitment isn't enough, it's hard to see how his mother could be. But if they went to the boy and said, tell your mother to produce something else for us or we're going to kill you. That's family. But think about it. That's one person, actually. That's one person in your family. Think about if you're creating a group based on nuclear family, then what about the other members of the family? And what's telling in this case is that the petitioner has a father. The father wasn't targeted for persecution at all. The father was, in fact, the one who witnessed the murder that was part of the first incident. So why? Because if you're saying nuclear family is the particular social group, it matters much that members of that social group are not being targeted. Maybe they want to hear something else on that point. What's your argument on the third point? Before you leave, I want to try to at least understand the point you're making. Because it does seem harsh, at least the position the government would take. And that is that a mother should be divorced from a son that you don't consider that relationship because the central issue, the central reason that they came here, they just want to recruit boys. It doesn't matter whether or not it's her son or anybody else's son. It just happens they want a son, and it happens to be her son. Exactly. And so this is one of the means by which they are exercising their recruiting. Yes. The fact of the matter is, though, she is the one who is now here. And the only reason that she is saying she's being threatened is because a mother is going to do this. And the reason she wouldn't do it for the kid across the street, likely. I don't know. Maybe she would or someone else. And it's not just bring the kid. It's allow them to do it, and it's her son. And she's put in this position of saying, well, if I'm credible and there's a fear of death and the act that I'm confronted with is turning my son over, then I'm going to die because I'm not going to turn my son over. So that nexus seems to connect somewhat. And notwithstanding, I understand quite, it makes it, I mean, it's really harsh to think that, well, so what, just turn your son over is essentially what you're saying. In other words, you're not going to be threatened if you just say take my son. Is that the end result? By no means is the government saying that she should have said take my son. But that a threat doesn't exist if you turn the son over. I mean, there isn't, that is the reason why it seems, you know, related to how they were targeting her. But according to her, if family as a particular social group is the reason for her being targeted, she should theoretically be targeted as a member of her family. Maybe. As her community. No, no, listen. When I start talking, you have to stop. That's when any of us do. But it's the government's position unless everybody in your family is threatened, that you don't have a familial bond. That's what you're saying. Why can't you, maybe this was the first and maybe she got out of there before they could go and say, and if your husband, there's no requirement that everybody in that familial situation be threatened. You don't say that, do you? No, Your Honor. But you can't show that her family is being targeted at all. Her family. You can show that her family connection to her son is being threatened. It's not being threatened. That's the basis for the threat to her. Her one family member, which is not a group. It's an individual. So in other words. What if she only has one son? Well, in this case, we know that she has brothers. She has a father. These are very telling about the nature of whether or not. So if there's more than one, then it's okay? In other words, if there was several that they were trying to recruit of her family members, then that would be okay? What it would show is whether her family is being targeted. Is her family being targeted? That would show that it's a central reason. In other words, it's the government's position. If somebody threatens to kill you, if you don't do something, they have to threaten to kill you unless everybody in your family does something. They won't. That's the government's position on familial ties? No, Your Honor. If they had, if they'd have put a gun to her head and said, I'm telling you this much, everybody in your family has to join. The women, they join the auxiliary. We don't care if they're grandmamas or not. Everybody. You would say that's on account of family then? Your Honor. Yes or no? No. I mean, you wouldn't have to show something along. I mean, those people. But you wouldn't say that was on account of family then? If they threatened to kill her unless everybody in her family did something? That wouldn't be on account of family? Why are they targeting the family? What do they have against the family? Well, we know one thing. They want the family to do something, and if the family doesn't do it, they're going to kill her. So what would it take then? I thought I was being outlandish with that question. If that isn't sufficient, what would be sufficient? I just mean that if what they want here is to recruit a member to their gang. That's her son. Her son. And her relationship to her son, the government's just pointing out that it's somewhat incidental to what they really want. Is there anything in the record to show they went to anybody else and threatened them unless this boy joined? There's nothing in the record. No, there's nothing in the record because she was in the position to give the consent right now. I think it's just us understanding. I think what you were saying is that she wasn't being persecuted because of her kinship ties. She's being persecuted because her son won't join this gang. Yes. And that's the harsh line to draw in the law, but that's the way it seems to be. That might be the way the law actually reads. I mean, I'm not sure what we as a court can deal with it, but it seems disingenuous to not connect the two, though. Your Honor, that's why I wanted to start by saying we understand this. This court has rejected that kind of connection in the past, I can tell you that. I can guarantee you that because I was involved in it when a case on some similar kind of familial bond, the government rejected it, the case was going to be embanked, and then the case was withdrawn, and the government worked out a way to address it, I can tell you. So there may be some cases in which we've said it, but I know this court, the Fourth Circuit, at least informally but through our formal procedures, has rejected such a position in the past. We don't have to reject it all the time. It's just hard to take the sun out of that equation, which the government wants to do. Your Honor, I agree with you. I agree that it's almost like this very fine line here because we recognize the relationship has something to do with her being contacted. Let me ask you this much. This has a policy question before we go on. Why would the government take such a hard stand on that point? Why wouldn't this government? By the way, quite frankly, this let me say, and I don't want to offend anybody or praise anybody, but I would think this President has been seen as more understanding and pro-immigration and understanding of why people want to be here than maybe any other we've ever had. Why is his Justice Department saying to us, it looks like it was because of her son, but it really wasn't? I mean, does that seem odd to you? I'm just asking. And I'm not making any political commentary. I'm just asking that question. It is a harsh line to draw because there's nothing incredible about what she's saying, and her fears are genuine. I want to point out. It's really arising from the case law. It's coming from this idea that. Well, it's really a policy decision for the first instance. I mean, it's the interpretation of the case law that has led us here, and that's what is constraining us in this vein here. What troubles me is prior decisions of this court and other judges in this determination. It's not a policy decision. I mean, policy decision would be not even be here today at all if there's a way to get around it. Your Honor, everyone's entitled. The Attorney General doesn't have to take and press every appeal. That's the policy question. That's the policy question. The law is what the law is, but I guarantee you every Attorney General looks at cases and declines to pursue cases that he thinks maybe he could win, but that's the policy question I was asking. Yes. Do you want to get to the third issue? I do want to say just on what you just said is that, you know, the government did offer prosecutorial discretion in this case. I do want to point that out. We were attempting to choose not to pursue this case. However, we cannot prevent anybody from wanting to pursue their claim before the court, and so, you know, by all means, that's their choice to pursue. And that's why, you know, the government has recognized the equities and the sympathies in this matter. What can the government just say, the Attorney General say, I looked at this case, I've seen the equities of it, we declined to fight their appeal? Why can't you do that? Your Honor, I mean. It's not you. It's not right. The government can do that. I think that the PD is the way that the government chooses to try to do that. But I'm saying that the government can do that if they want to. They do it all the time. They decline prosecution of cases all over the place. I don't fault them for it. Of course. Go to the third issue for me, please. Talk about that issue. Okay, sure. So the unable unwilling standard here, so that's another component of. . . Did anybody look at the country report? Did anybody in this process look at that? No, because what the board did was use her own evidence and testimony that she presented to find that if you show that one of your attackers was part of. . . One of the people part of that attack is in prison for 25 years, that's showing that there's at least some ability and willingness on the part of the government to take action. And even if it's not related to that incident, which we're not disputing, it's showing an ability and a willingness to take the actions necessary. What if that person didn't have enough money to bribe what is clearly a corrupt system by the government's own state report, state of country report? What about that? Well, you're. . . What about that? I mean, this court has sort of recognized sort of the rampant sort of overall issues that go on in El Salvador, certainly. And isn't that consistent with her explicit testimony about what she was worried about in this case? How does that just get disregarded? She said, I'm worried. Listen, she's not the most sophisticated person, certainly to our level of discussion. Obviously, we're trained to do this. She goes, I'm paraphrasing, look, yeah, go to the police and tell them this is what happens around this neighborhood. I don't know where you live or what happens here is you tell the police, they lock somebody up and that person is right back on the street and then look out, brother, you're going to pay the price for it. She already knows family members have been killed. I mean, and that is completely consistent with what the country report says. What are we to do with that? Just say it doesn't matter? Well, I think the problem in this case is that when you have evidence, you can rely on sort of general conditions, but at some point each individual case has to be evaluated as an individual case. And when you have evidence in the record, when you see that the police took action against someone, if she had reported the other people, maybe— So let me ask you this. You rest that on the fact that somebody who was involved with the murder, not because of the murder but involved in it, is in jail for 25 years for other charges. That makes the claim that she's not at risk or that the government is willing and able to take on the gang. That's your read that you hang your argument on. What it shows is that it may not have been futile is really how we're reading that because what you're trying, which she should show, is that had she reported, they would have done nothing, and then that can sort of excuse a little bit of the reporting requirement and it could take that away from her. But when the evidence only shows that they might have been responsive, that they very well could have been, that you seemingly would have been— Do you think if we disagree with you on the third point, is there any reason we can't decide the third point as this court? Could we decide that in fact that prong has been established? Could we decide that? No, Your Honor, because it involves a factual question, and it was based on the facts before the board, and if the court— Why can't we look at those facts and say, looking at those facts and everything in the record, just a legal conclusion as a matter of law, it's not right. I mean, can't we do that? The country report was never submitted into the record. The petitioner usually in fulfilling their burden— Can we look at that as sort of taking judicial notice? Can we look at it? Can this court look at it? The court could take judicial notice of things like that, but— Also, let's just say that the country's report is in front of us, and there's no factual dispute about what's in the record, is there? Is there a factual dispute on this record? Is there a factual dispute? I don't believe— Okay, let's just assume then there's no factual dispute. We know what the law is, and we know what the report is. Then we would be able to look at that and make the decision ourselves, correct? If the court was convinced that it had the facts that it needed, but not having the country report in the record was something— Did the BIA think they had the facts they needed? They did. So we could take those same facts and say that's enough for us, right? If the court took what the BIA did, yes. I meant in terms of looking at extraneous record evidence. It wouldn't be an extraneous record. I'm just saying—I'm talking about this record and the country report. We could look at that, correct? That's sort of what I was getting at. I mean, to the extent that if you're taking judicial notice maybe of what happened in another case, depending on—or you're taking judicial notice of the country report? Do you know what the country report is? Do you know what that is? Of course you do. Can we take judicial notice of the State Department's report on El Salvador? I believe this court can do that. So we can take that and have that information and have the facts in this case. You suggested something about some extraneous. I don't know what that is. I'm not suggesting anything other than the record in this case, the decisions below, and the country report. We could look at that, can't we? Well, because the board didn't look at the country report, that's what I was getting at. The court would be looking at something that the board— But can I say this? It's a simple question. Can we take judicial notice of, in this case, of the country report? Now that I'm thinking about it, if the board didn't consider it in the first instance, which the board does not appear to do in this case because it's taking her factual testimony— Well, in other words, nowhere in this case at the IJ or the BIA has the country report been considered. Right. Yes, and I apologize. I was thinking about that as you were saying it. Let me give you 10 seconds to wrap up here. Your Honor, I just wanted to say—I just wanted to get back to one point you made before, which is could we choose not to pursue this? Asylum applicants like to pursue their cases because it gets them a better form of relief. So regardless of what we may have could have said or done, petitioners are likely to want to take their cases forward, and we understand that. And I just want to make sure the court knows— They want to take them forward because they don't want to rest with your decision to get rid of them. They want to take it forward to win the case. They make the appeal. They claim the court's wrong. You could go, we don't fight that appeal, and then they would probably win under that circumstance. That's my point. It has nothing to do—heck, yeah, they want to fight a bad decision. Everybody would. I'm not talking about they're fighting a bad decision. I'm talking about you deferring and not fighting what they think is a bad—fighting against them when they think they've got a bad decision. That's what I'm talking about. Your Honor, the government can appreciate, you know, where you're coming from, absolutely. I mean, we can appreciate— I know that—let me say this. Let me tell you the answer is probably that's above your pay grade. Yes, Your Honor. That's probably the right answer for you just doing what you're tasked to do. I understand that. Yes, and again, we emphasize how much we empathize and understand, and that's what we try to pursue.  No, we're not. We're looking at the law. No, no, no. I don't want to be left with that we're just looking at—we have sympathies. I don't want that to be—we're looking at the law, and that's why we've taken so much time to talk about the law. We're not just looking at sympathies, because if it was just sympathies, you probably wouldn't be here. They would probably just win straight up by stamping something for them. Yes. We're trying to consider it in the context of the law. Yes, and that's exactly why I feel sheepish. As you pointed out coming forward a little, that's all I can do. Thank you very much for your—thank you very much. Thank you. Thank you. Ms. Jessie? You can save some time if you want to use it. Thank you, Your Honors. I did want to point out I do believe that the court can consider the State Department report as an official document. The court can take judicial notice of official documents. Even if it hadn't been considered below? I think so. I mean, it was presented to the board, and the board did not reject it. Also— It's in the record below. The report's in the record. It is not in the record. It was not presented at the trial level. It was cited in the brief before the BIA, and the government did not file an opposition to the petitioner's brief before the BIA, and the respondent cites the State Department report in his brief. I want to be sure that I'm clear what you are now asking us to do, because in your—throughout your briefing, you asked us to remand. And I think I've heard something different from you today as to what you want now. Well, I think that if the court can conclude that the evidence compels the court to conclude that Ms. Hernandez was persecuted on account of the membership in her family by perpetrators that the government is unwilling and unable to control, I don't think that the court has to go there if the court does not believe the evidence compels the court. In other words, if the court is not—doesn't believe the evidence compels the contrary conclusion, the court can remand to the BIA because the BIA abused its discretion in not providing a reasoned explanation on the nexus issue and on distorting and disregarding important aspects of the claim in the unable and unwilling to control issue.  I think the government started to advance the argument that the whole family needs to be persecuted in order to qualify. And this court addressed that issue in Aquino-Cordova v. Holder in July of last year. Isn't it really the central reason has to be the family tie? Yes. And the central reason, and this is where you look at it from a technical way, you say, well, it isn't because you're a member of the family. It's because we're trying to recruit people for the game. And the law says if it's a subordinate reason or if it's an ancillary reason, then it becomes so. They don't care about her being mother and being son. What they care about is getting someone in the game. That's the technical reading that you're getting here. I don't like it, but I'm just saying that's the technical reading. And when you look at the case law on it, it follows that. It tracks that. I don't think so, Your Honor. My time's run out, but I'd be happy to address. This case – By the way, let's just say this. I just want to be sure. It's not the central reason. It's not a right of card. A central reason. Thank you, Your Honor. A central reason. Go ahead. Let me make sure I understand that. You need a central reason, but if at least the motive for whatever's going on is supported, the reason that it is, if it's supported to the main reason, then that's interesting. I mean, it could be. I mean, I like that. But it really changes it from you could have several central reasons. Well? And it may well be that's the way it should be. Well, the victim of the persecution in this case is the mother. And the mother was threatened that if she does not allow her son to join the gang, that she will be killed. So this case is as much about gang recruitment as Aquino Cordova is about gang warfare. In Aquino Cordova, Mr. Aquino claimed that MS-13 was threatening to kill him and had attacked him because of his relationship to his cousin and his uncle, who were, at the time of the threats, the cousin was a current member of the gang. And... You're exactly right. That case there is a compelling case. I'm just thinking in terms of how this all tie in with the family. I'm just thinking you had a next-door neighbor who just loved this kid who lived next door. And the gang members come to him and says, if you don't talk this kid into joining this gang, we're going to shoot you right now. He has nothing. There's no family tie. And I'm trying to differentiate that and, well, we do have the kinship tie. Because if they could do that with the next-door neighbor, they wouldn't do the mother. So it's not really the mother. It's just that they are using whatever means is out there. Maybe somebody else. It could be a school teacher. It could be someone else. It could be the priest who just loves his kid and says, no, I'm not going to do that. But that person could be – there's no threat for that person because you don't have the family tie. But if you pick a family member, then it's a tie. And so that's where the whole technical argument come up. It's not about you being a family member. You just happen to be someone who can make this happen. Or we believe you can make it happen. But if we could pick someone else, we'd do that to get this kid into the game. But in the argument, though, that the reason she was picked was because in this situation, it's the family tie that makes the action possible. Exactly. I'm not disagreeing with that. I'm not disagreeing with that aspect of it. And I'm just saying in trying to read it technically, it's not – they picked her because of the family tie, but they could have picked someone else. But the aim is not to pick someone from the family. The aim is to get the kid. Right. And doesn't care whether or not it's mama or whether or not it's a next-door neighbor or a priest. Right. But in this case, they picked the mother. I got you. And just like – Right. In this case, it's not a case – this case is as much about gang recruitment as Aquino Cordova is about gang warfare. But here's the thing. If they picked the next-door neighbor that he called uncle, although he wasn't, and threatened him, he could try to establish family. I think so. But he would have a tougher time of doing it. I agree. Because the family tie is not there. And the arguments would be, I think, and I'm just sort of following this into Judge Wynn and had me think about this, is he might try to establish that, but she has the biological connection, which makes that part of it right. He would just have – and I think he would have a very tough time establishing it. You might argue hard for him, but I think it would be very difficult to establish that. Right. Anything else that you want to add? No, Your Honor. We just ask that you vacate the order of removal and grant the petition for review. All right. Thank you very much. Thank you, Your Honor. Let me say to both counsels, we enjoyed the spirit of discussion with you here today. We know it's real-life people involved. We know that, but we really are focusing on what do we do with the law. And quite frankly, sometimes we might think the law should be something else, but we have to follow what the law is. We just have to say, how does the law apply to this case? We'll adjourn court, step down.
judges: Dennis W. Shedd, James A. Wynn Jr., Stephanie D. Thacker